UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| RAYMOND CHESTNUT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00018-JMS-DLP |
| | ) | |
| CHARLES DANIELS, | ) | |
| | ) | |
| Respondent. | ) | |

**Entry Denying Petition for Writ of Habeas Corpus and
Directing Entry of Final Judgment**

On December 12, 2016, petitioner Raymond Chestnut filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging 18 separate disciplinary proceedings as Case No. 2:16-cv-0459-WTL-DKL. The Court determined that each disciplinary proceeding had the status of a separate court proceeding and ordered that 17 new habeas actions be filed. This action relates to Chestnut's challenge to the disciplinary proceeding that commenced with Incident Report No. 2550529 at a time he was incarcerated at USP Lewisburg.

Chestnut filed a supplemental petition on February 28, 2017. Dkt. 7. The respondent filed a return to order to show cause on November 20, 2017. Dkt. 33. Thereafter, Chestnut filed an amended petition. Dkt. 37. The Court will discuss Chestnut's claims asserted in his supplemental and amended petitions. For the reasons explained in this Entry, Chestnut's habeas action must be **denied**.

**A.  Legal Standards**

"Federal inmates must be afforded due process before any of their good time credits-in which they have a liberty interest-can be revoked." *Jones v. Cross,* 637 F.3d 841, 845 (7th Cir.

2011). "In the context of a prison disciplinary hearing, due process requires that the prisoner receive (1) written notice of the claimed violation at least 24 hours before hearing; (2) an opportunity to call witnesses and present documentary evidence (when consistent with institutional safety) to an impartial decision-maker; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action." *Id.*; *see also Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974). In addition, "some evidence" must support the guilty finding. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016).

  **B. The Disciplinary Proceeding Regarding Incident Report 2550529**

On February 19, 2014, attorney Jennifer Knepper wrote an Incident Report which stated the following:

> While reviewing a habeas petition inmate Chestnut filed with the U.S. District Court, Middle Dist. of Pennsylvania, I noticed an exhibit attached by inmate Chestnut which was allegedly signed by the DHO who heard the case the inmate is challenging (IR 2353199). I contacted the DHO, Duane Donovan, who confirmed the writing and signature on the document was not his and provided a memo to that effect. Inmate Chestnut filed this document in a habeas case where he alleges he was denied due process and is attempting to have 27 days of good conduct time restored to his sentence.

Dkt. 34-1 at 6.

A copy of the Incident Report was issued to Chestnut on February 19, 2014. Dkt. 34-1 at 6. The disciplinary process was suspended pending referral of the incident for possible prosecution. The Federal Bureau of Investigation ("FBI") released the Incident Report for discipline at the institution level on March 10, 2014. The Incident Report was then investigated by a lieutenant, who gave Chestnut the opportunity to provide a statement and provided notice of the Disciplinary Hearing Officer ("DHO") hearing to him on March 10, 2104. Dkt. 34-1 at 9. The investigating lieutenant then referred the Incident Report to the Unit Disciplinary Committee

("UDC") for further disposition. *Id.*

Chestnut appeared before the UDC on March 11, 2014. Dkt. 34-1 at 7. Chestnut stated that he did not violate regulations. The UDC referred the incident report to the DHO for further hearing, noting that appropriate sanctions were not available at the UDC level. *Id.* Chestnut was given the opportunity to name witnesses he wished to call and select a staff representative. Dkt. 34-1 at 10. Chestnut chose Ms. T. Lynn as his staff representative. Although Chestnut refused to sign acknowledging he had been informed of his rights, the UDC chairman completed a form indicating he had personally advised Chestnut of his rights. *Id.*

Chestnut's hearing before the DHO was held on March 12, 2014. Dkt. 34-1 at 13. Chestnut refused to appear before the DHO. The DHO documented Chestnut's waiver of his right to appear. *Id.* Chestnut provided a response to the allegations through his staff representative that he was innocent of all charges and that if the district court accepted his filings then they had to be legitimate. He requested that DHO Duane Donovan appear at the hearing to testify that he had received and responded to the document that was allegedly forged. He also requested an official from the district court to appear as a witness and requested a handwriting analysis in order to prove he did not forge DHO Donovan's response or signature. He stated he also wanted video footage of when staff delivered the Inmate Request to his cell and requested a polygraph examination. *Id.*

The DHO considered Chestnut's request for a court official to testify that the court received the documents and filed them. The DHO denied this request stating that the information the witness would provide was already provided in the body of the incident report stating that the documents were filed with the district court. Dkt. 34-1 at 14.

The DHO denied Chestnut's request to call DHO Donovan as a witness because DHO

Donovan's memorandum was already part of the record, stating that the document Chestnut presented to the Middle District of Pennsylvania was not signed by DHO Donovan nor was it in his handwriting, as purported by Chestnut. Dkt. 34-1 at 14, 15, 23.

Chestnut's request for video evidence was not made until the date of the hearing. The DHO inquired about the video evidence but was informed that such video evidence no longer existed because of the retention limitations of the video camera surveillance system. Dkt. 34-1 at 18. The DHO also informed Chestnut that polygraph tests are not applicable to the inmate discipline program. *Id.*

The DHO also considered Chestnut's statement that he was not ready to proceed with the DHO hearing. The DHO found that he received a copy of the Incident Report on February 19, 2014, and the DHO hearing did not occur until March 11, 2014. He also stated that Chestnut provided a very detailed response to the charges through his staff representative. The DHO believed Chestnut's statement that he was not ready to proceed was an attempt to delay the discipline process. Dkt. 34-1 at 18-19.

Based on the greater weight of the evidence, the DHO determined Chestnut committed the prohibited acts as written in the Incident Report. Dkt. 34-1 at 14-19. The DHO indicated this finding was supported by the reporting officer's account of the incident, the documentary evidence including the allegedly forged document, and DHO Donovan's memorandum stating it was not his handwriting or signature on the form. Dkt. 34-1 at 16-17. The DHO also relied on a publication from the Congressional Research Service defining perjury to determine that the mail had been used for an illegal purpose. Dkt. 34-1 at 17. The DHO considered Chestnut's denial, but found the other evidence more credible. Dkt. 34-1 at 16-19. The DHO stated the greater weight of the evidence revealed Chestnut forged and submitted a document to a United States District

Court, constituting perjury. Dkt. 34-1 at 19.

Based on the above information, the DHO sanctioned Chestnut to a disallowance of 41 days of good conduct time, 60 days of disciplinary segregation, and loss of commissary, telephone, and visiting privileges for 18 months for the violation of Code 196, Use of the Mail for an Illegal Purpose. Dkt. 34-1 at 19-20. He also sanctioned Chestnut with a disallowance of 14 days of good conduct time, 15 days of disciplinary segregation, and a 4 month loss of commissary, visiting, and telephone privileges, for the violation of Code 314, Forgery. Dkt. 34-1 at 20. Chestnut was advised of his appeal rights and provided a copy of the DHO report on April 1, 2014. *Id.*

### C. Analysis

Chestnut argues that his due process rights were violated during the disciplinary proceeding. His claims asserted in his supplemental petition filed on February 28, 2017, are that: 1) he did not receive notice of the written copy of the Incident Report or notice of the charges; 2) he was not afforded an opportunity to call witnesses or present evidence in his defense; and 3) after the hearing, he requested a copy of the DHO's findings and decision but was not provided a copy. Dkt. 7. In his amended petition filed after the respondent's return to order to show cause, Chestnut only asserts his claims that: 1) the DHO failed to consider a written statement; and 2) he was not given notice of the prison rules and regulations on prison discipline when he arrived at USP Lewisburg. Dkt. 37. The Court shall treat his earlier claims as being waived because they are not developed at all and are not mentioned in his amended petition. *See United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003) ("We have repeatedly warned that 'perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived

(even where those arguments raise constitutional issues).'") (quoting *United States v. Berkowitz*, 927 F.3d 1376, 1384 (7th Cir. 1991)).

For his first claim, Chestnut argues that "[a]t the onset of the DHO hearing" and "through his staff representative," he presented a written statement dated March 10, 2014. Dkt. 37 at 3. The hearing was held on March 12, 2014. He contends that the DHO failed to consider the statement and failed to document it. He alleges that the DHO "hid this evidence from the record and destroyed it, violating Petitioner's due process rights." Dkt. 37 at 6. The statement Chestnut allegedly presented stated:

> I didn't commit mail abuse or forged any documents charged in this case. I am requesting cell mate as a witness and officer who worked housing unit on date of alleged incident as witness also for testimony during hearing. Witnesses can testify that I am innocent and did not commit the charges in this case. Also, I was not given notice or an opportunity to know of prison rules on inmate discipline before being charged in this case.
> Dated: 3-10-14                    From: Chestnut, #13465-171

Chestnut is correct that this particular statement is not part of the record, but he has not shown a sufficient basis to support his allegation that he presented the statement to the DHO at the time of the hearing. His staff representative did not mention any written statement. Even if Chestnut had presented the statement to the DHO and it was treated as a request for witnesses, Chestnut was not denied exculpatory evidence. Having a witness cellmate or officer say that he "did not commit the charges in this case," is too vague to be meaningful. Moreover, no cell-mate or housing unit officer could have first-hand knowledge of whether the document purportedly written and signed by DHO Donovan was forged by Chestnut. For these reasons, Chestnut was not denied due process in any way relating to his alleged written statement.

For his second claim, Chestnut contends that he "was not given notice or an opportunity to know that it was against prison rules and regulations that Mail Abuse & Forging Documents

was a violation of bureau policy on inmate discipline." Dkt. 37 at 6. This contention is frivolous. Under no set of prison rules could it be acceptable for an inmate in any facility to forge documents. Moreover, Chestnut was given notice of the particular Incident Report and of his rights related to the disciplinary process. No due process violation occurred under these circumstances. Moreover, he has not identified any prejudice with regard to this claim so any possible due process violation would result in harmless error. *See Jones,* 637 F.3d at 846-47.

Although Chestnut does not challenge the sufficiency of the evidence, "a hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison,* 820 F.3d at 274. The Court cannot reweigh the evidence and finds that the Incident Report and the Memorandum from DHO Donovan satisfy the "some evidence" standard. The DHO's guilty finding is supported by sufficient evidence.

Chestnut was given adequate notice and had an opportunity to defend the charge. The DHO provided a written statement of the reasons for the finding of guilt and described the evidence that was considered. There was sufficient evidence in the record to support the finding of guilt. Under these circumstances, there were no violations of Chestnut's due process rights.

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which would entitle Chestnut to the relief he seeks. Accordingly, Chestnut's petition for a writ of habeas corpus relating to Report No. 2550529 must be **denied** and the action dismissed with prejudice.

Judgment consistent with this Entry shall now issue.

The clerk is requested to **update the petitioner's address on the docket,** as he has been transferred to Big Sandy USP.

**IT IS SO ORDERED**.

Date: 8/10/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

RAYMOND CHESTNUT
13465-171
USP BIG SANDY – Inmate Mail/Parcels
P.O. BOX 2068
INEZ, KY  41224

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov